UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
SAMUEL CARUSO,

                Plaintiff,

  -against-

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.
--------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 1:18-cv-7335

*Appearances:*
*For the Plaintiff*:
HAROLD SKOVRONSKY, ESQ.
1810 Avenue N
Brooklyn, NY 11230

*For the Defendant*:
SETH DUCHARME, ESQ.
Acting United States Attorney
Eastern District of New York
By: RACHEL BALABAN, ESQ.
Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

      Samuel Caruso seeks review of the Commissioner of Social Security's denial of his application for disability insurance benefits ("DIB"). Both parties move for judgment on the pleadings. For the following reasons, Caruso's motion is granted, the Commissioner's motion is denied, and the case is remanded to the Commissioner for the calculation of disability benefits.

**I.**

      Samuel Caruso applied for disability insurance benefits on August 11, 2015, claiming he had been disabled since March 30, 2015. His application was denied.

1

Caruso then requested a hearing before an Administrative Law Judge ("ALJ"). On December 6, 2017, a hearing was held before ALJ Charles Woode. In a December 20, 2017 decision, ALJ Woode found that Caruso was not disabled because he had the residual functional capacity to:

> perform light work as defined in 20 CFR 404.1567(b) except that he can occasionally stoop, kneel, crouch, crawl, climb ramps or stairs. Reach overhead and push or pull controls with the left lower extremity. He can occasionally handle, finger, and feel with the left hand, but frequently handle and finger with the right hand. He cannot climb ladders, ropes, or scaffolds. He requires the opportunity to sit for a minute or two after standing for 30-60 minutes.

AR 16. However, ALJ Woode determined Caruso had the following severe impairments: "lumbar degenerative disc disease with disc herniation, cervical degenerative disc disease and bilateral carpal tunnel syndrome." AR 15. The Appeals Council denied Caruso's request for review, making the ALJ's decision final.

## II.

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence ... means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*

*v. Perales*, 402 U.S. 389, 401 (1971); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).

### III.

Caruso raises a single issue on appeal, arguing that the ALJ failed to abide by the treating physician rule. Specifically, Caruso contends that the opinion of Caruso's treating neurologist, Dr. Igor Stiler, was not given controlling weight. The government argues that Dr. Stiler's opinion should not be credited due to internal inconsistencies. The government also argues that the objective medical evidence and the opinion of the Commissioner's consultant, Dr. Olga Yevsikova, supported the ALJ's residual functional capacity ("RFC") assessment. The Court agrees with Caruso that the ALJ violated the treating physician rule.

This Court applies the two-step framework recently laid out by the Second Circuit in *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). This guides ALJs "in determining the appropriate weight to assign a treating physician's opinion." *Estrella*, 925 F.3d at 95.

At step one, "the ALJ must decide whether the opinion is entitled to controlling weight." *Id*. at 95.

In this case, the ALJ assigned relatively little weight to the two medical opinions. The Commissioner's consultant, Dr. Yevsikova, was assigned "some

3

weight." AR 20. The treating physician, Dr. Stiler, was assigned "little weight." AR 19. No other medical treatment providers were assessed by the ALJ.

The ALJ assigned "little weight" to Dr. Stiler's opinion in significant part because of his conservative approach to treatment. *Id*. Caruso only received "physical therapy and non-narcotic medications." *Id*. The ALJ believed that if the limitations identified by Dr. Stiler were accurate, "Dr. Stiler would have recommended more invasive treatment modalities, evaluations with specialists, or even surgery." *Id*. On this point, the ALJ erred.

The Second Circuit has pointed out that the "opinion of the treating physician [is not] to be discounted merely because he has recommended a conservative treatment regimen." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008); *see also Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (district court erred in ruling that the treating physician's "recommend[ation of] only conservative physical therapy, hot packs, EMG testing—not surgery or prescription drugs—[w]as substantial evidence that [the claimant] was not physically disabled"); *Foxman v. Barnhart*, 157 F. App'x 344, 347 (2d Cir. 2005) ("ALJ erred in questioning the validity of [physician's] opinion based on his 'conservative' course of treatment"). Nor may ALJs "impose[ ] their [respective] notion[s] that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered." *Shaw*, 221 F.3d at 134-35. This is part of the broadly

4

established rule that the Commissioner may not "substitute his own expertise or view of the medical proof for the treating physician's opinion." *Id*. at 134. Here, the ALJ engaged in inappropriate substitution of his own judgment for that of the treating physician. A physician's unwillingness to recommend invasive surgery or to prescribe powerful, addictive medications must not be dispositive of the weight given to their opinion.

At step two, "if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it" and must "explicitly consider" the four nonexclusive *Burgess* factors:

> (1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.

*Estrella*, 925 F.3d at 95-96 (*citing Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) and 20 C.F.R. § 404.1527(c)(2)).

Dr. Stiler treated Caruso for years, beginning in the months after Caruso fell off a garbage truck, resulting in "blunt trauma on the bottom of his feet" and injuries to his "neck and back." AR 243. Caruso had regular office visits with Dr. Stiler and was prescribed physical therapy and medication to deal with frequent pain in his neck and back. Dr. Stiler is a specialist in neurology. His opinion was supported by ample documentation of Caruso's condition in the medical record and was consistent with the body of medical evidence.

By contrast, consulting physician Olga Yevsikova did not have a doctor-patient relationship with Caruso and met with him on a single occasion in October, 2015. Dr. Yevsikova is an internal medicine doctor. Notably, her bottom-line conclusions were not dramatically different from Dr. Stiler, as she found Caruso had low back and neck pain and had "moderate limitation[s]" in a wide range of physical activities. AR 255.

The ALJ's decision focused on whether Caruso's self-reports of pain in his back and neck were credible. On this point the Court believes the ALJ failed to act as a neutral arbiter of Caruso's self-reporting and the medical evidence. Federal courts have criticized ALJs who inappropriately rely on the "sit and squirm" test. *Aubeuf v. Schweiker*, 649 F.2d 107, 113 (2d Cir. 1981); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983). This "refers to an ALJ's own observations of the claimant, which are not entitled to much weight since the ALJ is not a medical expert." *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 282 (E.D.N.Y. 2005).

The ALJ wrote that he "carefully observed the claimant" and "he was not in any obvious pain or discomfort while walking in or out of the hearing room or while sitting during the course of the hearing." AR 19. The ALJ added, "[Caruso] lacked the general physical appearance of a person who might have been experiencing prolonged or severe pain." *Id*. This led to the conclusion that

6

"claimant's behavior and presentation at the hearing was inconsistent with the alleged severity of symptoms." *Id*.

The ALJ placed undue emphasis on his subjective interpretation of Caruso's presentation at the hearing. ALJs are permitted to observe demeanor and determine credibility, which inevitably informs their judgement to a certain extent. Yet, the ALJ should also account for subjective pain, since such pain can serve as the sole basis for a finding of disability. *Auebeuf v. Schweiker*, 649 F.2d 107, 113-14 (2d Cir. 1981). In this case, the ALJ erroneously relied on his own observations rather than impartially evaluating the medical evidence and the claimant's testimony.

## IV.

The Court is persuaded that this is a case where the ALJ "reached a mistaken conclusion on an otherwise complete record," and remand for the calculation of benefits is appropriate. *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) (discussing the Second Circuit's reasoning in *Balsamo v. Chater*, 142 F.3d 75 (2d Cir. 1998)). Caruso worked at the Sanitation Department for twenty-five years until he fell off a garbage truck, leading to the medical issues that are the subject of this appeal. His first filed for benefits in 2015, over five years ago.

From the record it appears that Caruso continued to receive payment after he stopped actively working because he had accrued overtime at the Sanitation Department. While the Court is remanding this case for the calculation of benefits,

7

the Commissioner is instructed consider whether Caruso is eligible for benefits during periods where he was actively being paid by the Sanitation Department.

## CONCLUSION

For the foregoing reasons, Caruso's motion is GRANTED, the Commissioner's motion is DENIED, and the case is REMANDED to the Commissioner for the calculation of disability benefits.

**SO ORDERED.**

       /S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 16, 2020